UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION AT LONDON
CIVIL ACTION NO. 6:26-cv-00004-REW-EBA

SABRINA ADKINS      PLAINTIFF

-vs-

BEN FIELDS, Individually and in his
Official capacity as a Deputy Sheriff with the
Letcher County Sheriff's Department;
EASTERN KENTUCKY CORRECTIONS
SERVICES INC.; and BILLY JONES,
LETCHER COUNTY SHERIFF      DEFENDANTS

---

**DEFENDANT LETCHER COUNTY SHERIFF'S DEPARTMENT RESPONSE TO PLAINTIFF (R. 195) MOTION IN LIMINE AND OBJECTION TO EXHIBITS AND WITNESSES**

---

Comes now the Defendant LETCHER COUNTY SHERIFF'S DEPARTMENT[1], by and through counsel, and for their response to Plaintiff's Motion in Limine and objections to exhibits and witnesses states as follows:

1. **Evidence That Plaintiff "Consented" To Sexual Contact with Defendant Fields**

As presented in Defendants' Second Motion in Limine at arguments II and III (R. 196), Plaintiff was not a *pretrial detainee* and not otherwise in custody at the time of the interactions - Plaintiff had been released on bond. *See* R. 143-2 and 193-2, Bond, Page ID# 2615. The home monitoring was unrelated to law enforcement and was being done as a matter of judicial administration of the Letcher Circuit Court as a condition to release and unrelated to the Letcher County Sheriff's Office. The fees for monitoring were to be paid to Eastern Kentucky

---

[1] The Court has previously ruled that the official capacity claims asserted are to be construed as claims against the Letcher County Sheriff's Office (as opposed to official capacity claims against Fields and Jones). R. 165, Opinion p. 24.

1

Correctional Services, Inc., who provided the GPS monitoring service. People released on bond with home monitoring are not considered pretrial detainees and KRS 520.010 clarifies that they are not in "custody". Cases cited by Plaintiff are premised upon the Plaintiff being in custody or otherwise a pretrial detainee – a distinguishing fact in this matter.

Plaintiff began messaging Defendant Fields inappropriate content three days after release on June 21, 2021. See R. 143-20, messages. There is a difference between being released on bond with home monitoring requirements (*See* Plaintiff Conditions for Release (Surety Bond) at R. 143-2) and being on home incarceration (house arrest) in Kentucky. These distinctions are based on the statutory framework and case law governing each situation. Release on bond with home monitoring requirements is a form of pretrial release where the court may impose conditions to ensure the defendant's appearance at trial and the safety of the community. Under KRS § 431.520(5) the court may require participation in a global positioning monitoring system or impose other conditions deemed necessary, such as home monitoring, to ensure compliance with release terms.

Under KRS 520.010(2) "Custody" means restraint by a public servant pursuant to a lawful arrest, detention, or an order of court for law enforcement purposes, **_but does not include supervision of probation or parole or constraint incidental to release on bail_**. *See* KRS 520.010. Additionally, it appears that the home monitoring electronic device was not even activated at the time of the alleged interactions. In an unpublished opinion the Kentucky Court of Appeals similarly found that when house arrest is merely a condition of bond that a Defendant is not entitled to credit for time served for the time spent on home incarceration because "*he was not in custody*". See R. 196-7, *Jude v Commonwealth*, 2016-CA-001297-MR, 2017 WL 3317604, *7 (unpublished decision).

**RESPONSE TO OBJECTION TO LCSO EXHIBTS**:

1.  R. 195-1, bates 21-23: The fact that a "*court security officer*" is not defined as a "*law enforcement officer*" and defined differently as a matter of law is believed to be crucial in the defense of multiple issues that will be raised by Plaintiff concerning training, policies, and other matters which may be presented at trial. Plaintiff indicates that they intend to argue that Fields would be held to the standards of a "law enforcement officer" which he was not. As a "court security officer" Fields was subject to different training standards by law. Additionally, LSCO policies hold law enforcement officers to a higher standard of training as opposed to court security officers.

2.  R. 195-1, bates 38-50: Defendant has objected to Mr. Triplett testifying in this matter (R. 193, Page ID# 2604) because his testimony is not relevant to causation as he allegedly called the sheriff's office to report an issue with Ben Fields after the interactions had occurred and Mr. Triplett cannot identify who he allegedly reported these matters to. To the extent that Mr. Triplett is allowed to testify that he called the sheriff's office, then stopped in the sheriff's office to complain about Fields, and was subsequently harassed by law enforcement – Defendants should be allowed to demonstrate that Mr. Triplett had received multiple citations both before and after his alleged reporting – and that these were citations by multiple police agencies – not just the Letcher County Sheriff's Office.

3.  R. 195-1, bates 51-52: Plaintiff testified (R. 134, Adkins, Page ID# 1126 and 1247) that she received a copy of the notice of non-affiliation at the time service was initiated and that she also had called the number and spoken with Ms. Stockham multiple times (Page ID# 1118 - 1119).

4.  R. 195-1, bates 57-59: Given the witnesses mental status and likely inability to testify

this may be the best evidence as these are facts that have been verified under oath. Until Plaintiff's case is presented it is unknown what, if any, information may be needed from these verified responses.

5.   R. 195-1, bates 60-84:  These are crucial for the issue of consent. Whether the Court determines that Plaintiff is entitled to the rebuttable presumption regarding consent or if the Court determines that the rebuttable presumption does not apply these messages are crucial to the defense of this matter – not only regarding consent, but to dispute other issues which Plaintiff may testify about at trial, including, but not limited to intimidation, fear, etc.

6.   R. 195-1, bates 87-88:  See response to objection 3 above.

7.   R. 195-1, bates 153:   It is expected that Ms. Frazier will authenticate this document.

**RESPONSE TO OBJECTION TO LCSO EXHIBTS**:

1. Alexis Stambaugh:    Until Plaintiff's case is presented it is unknown what relevance this witness's testimony may have in this matter. The affidavit shows direct knowledge of training expectations in the office, dissemination of policies, required reading of policies, knowledge of Chris Triplett, no prior allegations of anyone in the office sexually abusing anyone, how complaints were handled, a lack of any known complaints about Ben Fields, and disbelief and shock when first learning of the allegations against Ben Fields.  It is believed that multiple topics contained in this witnesses affidavit may be relevant to matters presented by Plaintiff at trial.

2. Seth Whitaker:     Until Plaintiff's case is presented it is unknown what relevance this witness's testimony may have in this matter. The affidavit shows direct knowledge of training expectations in the office, dissemination of policies, required reading of

4

policies, knowledge of Chris Triplett, no prior allegations of anyone in the office sexually abusing anyone, how complaints were handled, a lack of any known complaints about Ben Fields, and disbelief and shock when first learning of the allegations against Ben Fields. It is believed that multiple topics contained in this witnesses affidavit may be relevant to matters presented by Plaintiff at trial.

3. <u>Stacy Yates</u>: Stacy Yates was identified by Plaintiff as a witness in this matter. Defendant has objected to Mr. Yates being called as a part of Plaintiff's case in chief. To the extent that he is allowed to testify evidence of Adkins's drug use, emotional state, abusive relationships and other matters concerning character may be relevant at trial – especially for impeachment purposes. Plaintiff provided hundreds of pages, hundreds of audio files and dozens of video files in discovery between she and Mr. Yates covering a broad range of salacious items that may be used at trial to impeach Plaintiff should she not testify truthfully. It is likewise expected that <u>Enos Little</u>, <u>Joseph Eddie Adkins</u>, <u>Thomas Edward Adkins</u> and <u>Earnest Reynolds</u> may likewise be able to impeach any untruthful testimony by Plaintiff.

PORTER, BANKS, BALDWIN & SHAW, PLLC
327 Main Street, P.O. Drawer 1767
Paintsville, Kentucky 41240-1767
Telephone: (606) 789-3747
Facsimile: (606) 789-9862

*/s/ Jonathan C. Shaw*
JONATHAN C. SHAW
jshaw@psbb-law.com
*Counsel for Defendant Letcher County Sheriff's Office*

<u>CERTIFICATE OF SERVICE</u>:

I hereby certify that on January 16, 2026, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system and I further certify that I mailed a true and correct copy of the foregoing to:

Joe F. Childers, Esq.
Childers & Baxter, PLLC
201 West Short Street Suite 300
Lexington, Kentucky 40507
bethany@jchilderslaw.com

Jason E. Williams, Esq.
Williams and Towe Law Group
303 S. Main Street
London, KY 40743
jason@wftlaw.com

                                      */s/ Jonathan C. Shaw*
                                      JONATHAN C. SHAW