# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF KENTUCKY
# LONDON DIVISION
# CIVIL ACTION NO. 6:26-cv-4-REW-EBA

| | |
|---|---|
| **SABRINA ADKINS** | ) |
| | ) |
|     **PLAINTIFF** | ) |
| **V.** | ) |
| | ) |
| **BEN FIELDS, Individually** | ) |
| **And in his Official capacity as** | ) |
| **a Deputy Sheriff with the** | ) |
| **Letcher County Sheriff's Department,** | ) |
| | ) |
| **AND** | ) |
| | ) |
| **BILLY JONES, LETCHER COUNTY** | ) |
| **SHERIFF** | ) |
| | ) |
|     **DEFENDANTS** | ) |

---

**PLAINTIFF'S RESPONSE TO STINES'S MOTION TO INTERVENE (DE 216-1), REPLY TO STINES'S OPPOSITION TO MOTION FOR WRIT *AD TESTIFICANDUM* (DE 216), REPLY TO LCSO RESPONSE TO MOTION FOR WRIT *AD TESTIFICANDUM* (DE 217), AND REPLY TO FIELDS'S RESPONSE TO MOTION FOR WRIT *AD TESTIFICANDUM* (DE 219)**

---

In response to the Court's Order (DE 218) entered February 12, 2026, the Plaintiff respectfully tenders this Response To Stines's Motion To Intervene (DE 216-1), Reply To Stines's Opposition To Motion For Writ *Ad Testificandum* (DE 216), Reply To LCSO Response To Motion For Writ *Ad Testificandum* (DE 217), And Reply To Fields's Response To Motion For Writ *Ad Testificandum* (DE 219)(the "Reply").

Plaintiff submits the Reply to: (a) support issuance of a writ of *habeas corpus ad testificandum* to secure the trial testimony of former Sheriff Shawn "Mickey" Stines; and (b)

1

oppose the arguments advanced by Stines, Defendant LCSO, and Defendant Fields that live testimony is unnecessary, unduly prejudicial, or futile. The record confirms that Stines, as final policymaker for LCSO during the relevant period, possesses uniquely probative evidence directly bearing on Plaintiff's municipal-liability claims and foundational issues for expert testimony. The responses do not undermine the necessity and materiality of this live testimony, and any Fifth Amendment concerns can be managed through ordinary trial administration without foreclosing necessary, non-privileged proof.

It is ludicrous to suggest, as Stines has done, that the testimonial topics identified by Plaintiff in her Supplement to Motion for Writ (DE 215), to which former Sheriff Stines is expected to testify, include areas of inquiry which would require Stines to invoke his Fifth Amendment rights due to pending charges against him for capital murder. The topics on which he is expected to testify at trial are entirely unconnected to the charges against him for murder.

To plead a municipal liability claim under § 1983, a plaintiff must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. Stines's testimony addresses policies, customs, training, supervision, complaint handling, and secondary-employment practices of the LCSO during his tenure as Sheriff, which are central to *Monell*[1] liability. Defendants have identified no other witnesses whose testimony would supplant the live testimony from Stines, the final policymaker of the policies at issue in this case. Live testimony is necessary for the jury to evaluate credibility and for effective presentation of policymaker knowledge and customs.

Plaintiff has previously identified the material topics on which Stines is expected to testify. Each will be addressed in turn below.

---

[1] *Monell v. Dept. of Social Services*, 436 U.S. 658, 98 S. Ct. 2018 (1978).

# SPECIFIC TESTIMONY

**Material Topics Of Expected Testimony Supporting *Monell* Liability And The Motion For Writ Of *Habeas Corpus Ad Testificandum***

1. *Written policies existed but were not enforced or implemented as required.* This testimony, while critical to Plaintiff's claim, will not require Stines to invoke his Fifth Amendment rights due to pending charges against him for murdering District Judge Kevin Mullins. There is no nexus between whether Sheriff's office policies were enforced and whether Stines is guilty of murder.

2. *LCSO maintains a policy manual with a sexual misconduct policy. Fields signed an acknowledgement that he received the policy manual.* This testimony will not require Stines to invoke his Fifth Amendment rights due to pending charges against him for murdering District Judge Kevin Mullins. There is no nexus between whether Fields received the sexual misconduct manual and whether Stines is guilty of murder.

3. *Stines does not recall whether LCSO conducted any annual trainings on its policies, and as to sexual misconduct training he recalled none.* This testimony is far removed from the question of whether Stines is guilty of murder.

4. *Stines will confirm department ethics/personal conduct policy was in effect 2019–2022; he provided deputies copies but the department did not conduct the policy's stated annual ethics in-service training.* Again, this testimony is factual testimony totally unrelated to Stines's murder charges, and will not require him to invoke his Fifth Amendment rights at this civil trial.

5. *When asked about training under a policy subsection regarding sexual misconduct, Stines will admit that the Letcher County Sheriff's Department provided none to his recollection.* This expected testimony will not require Stines to invoke his Fifth

Amendment rights due to pending charges against him for murdering District Judge Kevin Mullins. There is no nexus between whether the Sheriff's office provided training to deputies and whether Stines is guilty of murder.

6. *Rather than conducting the annual in-service training on ethics Stines will testify that he gave the deputies and officers the policy and told them to familiarize themselves with the policy.* There is no connection between this expected testimony and the murder charges faced by Stines. It would be improper for him to attempt to invoke Fifth Amendment rights.

7. *Stines will testify that the LCSO did not provide any block of training on high-risk critical tasks, including sexual harassment and sexual misconduct policies, and that while Sheriff he did not have any lesson plans or outlines for in-house training sessions.* This expected testimony will not require Stines to invoke his Fifth Amendment rights due to pending charges against him for murdering District Judge Kevin Mullins. There is no nexus between whether the Sheriff's office provided training to deputies and whether Stines is guilty of murder.

8. *He will testify that a secondary-employment policy existed but was not enforced. Stines will testify that he had direct involvement and knowledge that LCSO had a secondary employment policy requiring applications/approvals; however, he did not recall instances of compliance but rather gave verbal approvals.* There is no nexus between whether Sheriff's office policies were enforced and whether Stines is guilty of murder.

9. *Stines will testify that he previously held the same position with EKCS that Fields held and that he recommended/trained Fields for the position.* It is inconceivable how this testimony could require invocation of Stines's Fifth Amendment rights.

10. *He will admit that LCSO did not have the outside employment request form and does not recall obtaining such written approvals.* There is no nexus between whether Sheriff's office policies were enforced and whether Stines is guilty of murder.

11. *Stines will testify that he was aware that Fields performed services for EKCS while wearing a Letcher County Sheriff's Deputy uniform and that was approved for EKCS services performed during his deputy sheriff work hours or immediately thereafter.* This testimony goes to lax enforcement of LCSO policies and will reinforce Plaintiff's expected testimony that the lines between Sheriff's office duties by Fields and EKCS duties were blurred. It has nothing to do with the murder charges against Stines and would not be testimony for which Stines would properly invoke his Fifth Amendment rights.

12. *Stines will admit that complaint policies at LCSO were not followed and that he rather used an informal, bespoke process contrary to policy. He will testify that he handled complaints informally, contrary to LCSO's formal policies requiring written complaints against deputies.* There is no nexus between whether Sheriff's office policies were enforced and whether Stines is guilty of murder.

13. *Stines will admit that no written complaint was taken when Chris Triplett allegedly reported Fields for sexual abuse of Jennifer Hill, first by telephone to LCSO and then in person to an unknown employee of LCSO.* There is no nexus between whether Sheriff's office policies were enforced and whether Stines is guilty of murder.

14. *Stines will admit that LCSO did not have an internal affairs section and will confirm that no one had internal affairs responsibility.* It is difficult to imagine how this testimony and

the murder charges against Stines are connected. It would be improper for Stines to invoke his Fifth Amendment rights to justify failing to testify as expected.

15. *Stines will authenticate sexually crude messages that he shared with his deputies which will be introduced into evidence. His testimony is crucial to show that during the relevant time period, Stines, Fields, and other LCSO employees regularly sent each other graphics of sexual imagery and made sex-related and crude comments via Facebook messenger. He will admit that this set a "horrible" example for his deputies. He will admit that those communications violated policies related to professional conduct. He will testify that no one was disciplined or reprimanded as a result of any of those communications.* There is no nexus between whether Sheriff's office policies were enforced and whether Stines is guilty of murder. The example set by Stines for his deputies' behavior, which he testified to was "horrible," is crucial to Plaintiff's *Monell* claims. He is not charged with any crime related to this conduct and could not possibly properly invoke his Fifth Amendment rights to self-incrimination to refuse to testify to the example he set for his deputies.

16. *Stines will admit that "Sexual harassment/External Sexual Misconduct by Officers" was identified as a High Risk Critical Task because the final policy maker of the agency knows to a moral certainty that officers will face these sexual exploitative situations and the wrong decision with respect to that task will lead to a physical or constitutional injury.* Stines was the final policy maker of LCSO during his tenure as Sheriff. He understood the risks involved in failing to properly train officers under his command, yet he failed to do so. This is critical evidence for Plaintiff in her civil rights case, but does

not present testimony which would implicate Stines for murder. It would be improper for Stines to refuse to testify to this information due to pending murder charges against him.

17. *Stines will testify that Sabrina Adkins and Jennifer Hill, while they were on home incarceration, were in the custody of law, and that "Ben Fields had supervisory or disciplinary authority over them. He will testify that Ben Fields violated this policy and "absolutely" violated the sexual misconduct policy and the policy related to abuse of position.* This testimony is important to establish that Adkins and Hill were "pretrial detainees" and therefore entitled to the presumption of non-consent to sexual interaction with those with supervisory or disciplinary authority over them. See *Hale v. Boyle Cnty.*, 18 F. 4th 845 (6th Cir. 2021). This testimony is unrelated to Stines's murder charges and there is no nexus between this testimony and the proper invocation of Stines's Fifth Amendment rights.

**ARGUMENT**

**I.      STINES'S POLICYMAKER TESTIMONY IS UNIQUELY MATERIAL AND NECESSARY TO THE *MONELL* CLAIMS**

The Court has previously held that Plaintiff's municipal-liability claims against the Letcher County Sheriff's Office for failure to train or supervise persist for trial. Plaintiff seeks a writ to produce former Sheriff Stines at trial because, as the Sheriff and final policymaker during the relevant period, his testimony is uniquely material to municipal-liability elements concerning policies, customs, training, supervision, complaint handling, and secondary-employment practices. This is particularly true here, where Plaintiff's claim is that the LCSO can be liable for a single act of unconstitutional behavior exercised by its sole policymaker – former Sheriff Stines. See *Pembaur v. City of Cincinnati*, 475 U.S. 469, 106 S. Ct. 1292, 89 L.Ed.2d 452 (1986).

Plaintiff has proffered detailed topics of expected testimony from Stines, including non-enforcement of written policies; absence of annual ethics/sexual-misconduct training; lack of high-risk critical task training; non-enforcement of secondary-employment approvals; knowledge and approval of Fields's EKCS work and uniformed presence; informal complaint handling contrary to policy; absence of internal affairs; sexually crude internal communications with deputies and lack of discipline; and acknowledgments that Fields's conduct violated LCSO policies and that he abused his position over individuals on home incarceration.

Plaintiff further proffered that Stines recommended Fields for LCSO employment, recommended and trained Fields for EKCS duties, and would testify to LCSO's policy acknowledgments and failures of enforcement directly relevant to Plaintiff's proof and expert foundation. These specific, policy-level admissions and foundational facts cannot be duplicated by non-policymaker witnesses and are central to Plaintiff's proof at trial. The responses offer no substitute witness with equal authority or first-hand policymaker knowledge to supply this testimony.

## II. THE EXISTENCE OF A PRIOR DEPOSITION DOES NOT NEGATE THE NEED FOR LIVE TRIAL TESTIMONY

Stines argues that Plaintiff previously deposed him and therefore live testimony is unnecessary. But the existence of prior sworn discovery does not eliminate the probative value of live testimony, particularly for central policymaker admissions, credibility assessments, and foundation for expert opinions already previewed in Plaintiff's proffer. Plaintiff has identified trial-critical topics that bear on *Monell* elements and expert testimony, for which live examination and authentication streamline admissibility and enable the jury to assess credibility firsthand. The Sixth Circuit recognizes a preference for live testimony in all proceedings.

In *Flight Solutions, Inc. v. Club Air, Inc.*, No. 3:09-CV-1155, 2010 WL 276094, at *4, FN 6 (M.D. Tenn. Jan. 14, 2010), the court observed that "trial by videotape is simply not preferable to live examination in front of a jury." See also *In re Aredia & Zometa,* 2008 U.S. Dist. LEXIS 17906 at *13, 2008 WL 686213. These cases reflect the understanding that live testimony provides qualitative advantages that depositions cannot replicate, including the jury's ability to assess witness demeanor and credibility in real time. Here, Stines's deposition was not videotaped.

### III. FIFTH AMENDMENT CONCERNS DO NOT WARRANT DENIAL OF THE WRIT; ORDINARY TRIAL MANAGEMENT CAN SEGREGATE NON-PRIVILEGED TOPICS AND AVOID UNDUE PREJUDICE

Stines asserts he will invoke the Fifth Amendment on topics reasonably tending to incriminate him and argues transport would be futile and prejudicial. The Fifth Amendment does not categorically bar securing a witness's appearance where material, non-privileged testimony exists. Plaintiff's proffer identifies multiple areas of non-privileged testimony—policies in effect, training practices, supervisory structures, secondary-employment procedures, and authentication of official materials and communications—that do not necessarily pose a reasonable risk of self-incrimination. The Sixth Circuit has held:

> Before a witness, such as Morganroth, is entitled to remain silent, there must be a valid assertion of the fifth amendment privilege. . . . (citation omitted) It is for the court to decide whether a witness' silence is justified and to require him to answer if it clearly appears to the court that the witness asserting the privilege is mistaken as to its validity. . . . A valid assertion of the fifth amendment privilege exists where a witness has reasonable cause to apprehend a real danger of incrimination. . . . A witness must, however, show a "real danger," and not a mere imaginary, remote or speculative possibility of prosecution. *United States v. Apfelbaum,* 445 U.S. 115, 128, 100 S. Ct. 948, 955–956, 63 L.Ed.2d 250 (1980). *Zicarelli v. New Jersey State Commission of Investigation,* 406 U.S. 472, 478, 92 S. Ct. 1670, 1675, 32 L.Ed.2d 234 (1972); *Rogers v. United States,* 340 U.S. 367, 374–75, 71 S. Ct. 438, 442–443, 95 L. Ed. 344 (1951); *cf., Marchetti v. United States,* 390

U.S. 39, 88 S. Ct. 697, 19 L.Ed.2d 889 (1968).

*In re Morganroth*, 718 F.2d 161, 167 (6th Cir. 1983).

Here, Stines has previously testified, under oath, as to every topic identified by Plaintiff to which he is expected to testify at trial. His deposition testimony, previously taken, was taken under oath. It would not be proper to permit Stines to dodge questions at trial to which he has previously testified. If he fears criminal prosecution for answers he may give to questions at trial, then he should likewise fear criminal prosecution for answers he gave under oath in his deposition. Yet, prosecutors already have his sworn testimony through his deposition testimony. It is entirely unreasonable that Stines should get away with refusing on Fifth Amendment grounds to answer questions he has previously answered under oath.

Stines himself proposes that, if an appearance occurs, the Court could require advance proffers of non-privileged topics, prohibit privilege-eliciting questions, and bar adverse inferences. Those measures confirm that targeted, non-privileged testimony is feasible and that standard safeguards—not wholesale denial—are the appropriate vehicle to manage privilege. To the extent Stines anticipates privilege invocations on certain questions, the Court can adjudicate privilege claims question-by-question, utilize sidebar procedures, sequence examination to prioritize non-privileged areas (e.g., written policies, training schedules, organizational roles), and provide limiting instructions as needed—consistent with the protective contours that Stines himself invites.

### IV. SPECULATIVE PREJUDICE AND NOTORIETY DO NOT OUTWEIGH THE WRIT'S NECESSITY; NEUTRAL TRIAL CONTROLS CAN MITIGATE ANY RISK

Fields argues that the notoriety of the separate criminal case and the possibility of visible privilege invocations would unduly prejudice the jury and confuse issues. Generalized claims of

notoriety are speculative and manageable. Routine trial controls—*voir dire* screening, limiting instructions, and sequencing of testimony—address any risk without sacrificing crucial policymaker evidence. Fields relies on authorities addressing the impropriety of calling a witness solely to elicit a jury-facing invocation of privilege, but Stines's anticipated testimony, as proffered by Plaintiff, includes extensive non-privileged issues central to municipal-liability elements and evidentiary foundations.

### V. SECURITY, LOGISTICS, AND TIMING CONCERNS DO NOT DEFEAT THE WRIT; ALTERNATIVE MODALITIES EXIST

Stines references pending criminal proceedings, anticipated scheduling, and security/transport considerations, and urges denial or, alternatively, remote appearance and other limitations. Those concerns can be accommodated by the Court through transport coordination with custodians, narrowly tailored time windows, or, if the Court prefers, live two-way remote testimony preserving confrontation-like functionality for cross-examination and authentication of exhibits. These options safeguard security and logistics while ensuring the jury receives necessary policymaker evidence.

### VI. THE MEDIA REPORT ATTACHED BY DEFENDANTS IS IMMATERIAL TO THE WRIT'S NECESSITY AND ADMISSIBILITY RULINGS

Defendants tender a media article about Stines's separate criminal case. This third-party reporting has no bearing on whether the jury in this civil case should hear non-privileged, material policymaker testimony relevant to municipal liability. Any risk of spillover prejudice can be addressed by standard trial management without eliminating critical proof.

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Grant Plaintiff's Motion for Writ of *Habeas Corpus Ad Testificandum* to secure the trial testimony of Shawn "Mickey" Stines on March 4, 2026, with reasonable logistics to be coordinated with custodial authorities;

2. Deny Stines's Motion in Opposition, as well as LCSO's and Fields's Responses in Opposition;

3. In the alternative, if the Court deems limitations appropriate, implement reasonable procedures to: (a) sequence non-privileged policymaker topics first; (b) resolve any privilege issues outside the jury's presence as needed; (c) provide appropriate limiting instructions; and (d) permit live, two-way remote testimony if the Court concludes it better accommodates security or scheduling while preserving the integrity of the trial presentation.

Respectfully submitted,

/s/ Joe F. Childers
JOE F. CHILDERS
JOE F. CHILDERS & ASSOCIATES
The Lexington Building
201 West Short Street
Suite 300
Lexington, Kentucky 40507
Telephone: (859) 253-9824
Facsimile: (859) 347-2310
joe@jchilderslaw.com

**CERTIFICATE OF SERVICE**

I hereby certify that on February 14, 2026, a copy of the foregoing was served electronically in accordance with the method established under this Court's CM/ECF Administrative Procedures and Standing Order upon all parties in the electronic filing system in this case.

/s/ Joe F. Childers
COUNSEL FOR PLAINTIFF
